IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 29, 2020

## DANNY JAY BRANAM, JR. v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 108643   G. Scott Green, Judge**
_____

### No. E2019-01149-CCA-R3-PC
_____

The petitioner, Danny Jay Branam, Jr., appeals the denial of his post-conviction petition, arguing the post-conviction court erred in finding he received the effective assistance of counsel at trial and on appeal. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and TIMOTHY L. EASTER, JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Danny Jay Branam, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; Charme P. Allen, District Attorney General; and Joanie S. Stewart, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Facts and Procedural History*

#### A. Trial

The petitioner was convicted of felony murder committed during the perpetration of aggravated child abuse and aggravated child abuse. *State v. Danny Branam*, No. E2014-01345-CCA-R3-CD, 2015 WL 4594158, at *1 (Tenn. Crim. App. July 31, 2015), *perm. app. denied* (Tenn. Feb. 14, 2018). He was subsequently sentenced to life imprisonment for the felony murder conviction and twenty years for the aggravated child abuse conviction, to run consecutively. *Id.* This Court affirmed his convictions on appeal. *Id.* at *19. Because the testimony from trial was extensive, the following is a summary of the relevant proof presented at trial as it relates to the petitioner's post-conviction claims.

On the evening of April 5, 2011, Leslie Wakefield, a security officer at Big Oaks Apartments, was approached by a tenant, Brittany Stinnett, who was holding the "lifeless body" of her nineteen-month-old daughter, the victim, B.S.[1]  *Id.* at *1.  Ms. Wakefield noticed the victim had extensive bruising on her head, torso, arms, and legs.  *Id.*  Ms. Stinnett told Ms. Wakefield the victim had fallen out of her crib.  *Id.*  Concerned that the victim's injuries may have been a result of child abuse, Ms. Wakefield called 9-1-1.  *Id.*  Captain Dean Fontaine of the Knoxville Fire Department responded to the scene and found the victim in a state of "obvious respiratory distress" on the couch inside Ms. Stinnett's apartment.  *Id.*  He also noticed the victim had "quite a bit of bruising" all over her face and body, which he believed was the result of child abuse.  *Id.*

James Perry, a paramedic, arrived in an ambulance to transport the victim to the hospital.  *Id.* at *2.  Mr. Perry found the victim lying on the couch surrounded by firefighters and immediately noticed the victim had difficulty breathing and bruising on her legs.  *Id.*  Mr. Perry was told the victim fell out of her crib.  *Id.*  Though the crib was broken, Mr. Perry did not think the crib was high enough from the ground to cause the victim's injuries.  *Id.*

The victim was taken to the emergency room where she was examined by Dr. Carlos Angel, a pediatric surgeon.  *Id.*  Dr. Angel stated the victim "had bruises in different stages of resolution[,]" and "it look[ed] like [the victim] might have been traumatized multiple times."  *Id.*  According to Dr. Angel, the victim's injuries were not consistent with an accident or fall.  *Id.*  The following day, the victim was examined by Dr. Mary Palmer, a pediatric emergency medicine physician and expert in pediatric child abuse.  *Id.* at *3.  Dr. Palmer reviewed the victim's emergency room records, which stated that the victim suffered a six-foot fall and that the victim's parents reported she had jumped out of her crib.  *Id.*  However, after examining the victim's body, Dr. Palmer concluded the injuries were not consistent with an accident, "but rather are a pattern of repeated blows with great force, and in some places abrasions consistent with punching or dragging on the skin."  *Id.*  The victim eventually died as a result of her injuries.

Dr. Darinka Mileusnic-Polchan, who performed the autopsy of the victim, concluded the victim had fifty-one separate injuries.  *Id.* at *11-12.  The primary area of trauma was the victim's head, where she suffered a "thick layer of subdural hemorrhage" and a hemorrhage to her retinas in both eyes.  *Id.* at *13.  Dr. Mileusnic-Polchan opined the victim suffered "battered child syndrome, and the manner of [her] death was homicide."  *Id.* at *14.

---

[1] It is the policy of this Court to refer to the minor victims by initials only.

At the time of her death, the victim was living with Ms. Stinnett, the petitioner, Ms. Stinnett's other child, and Michael Stinnett, the petitioner's cousin. *Id.* at *4. According to Ms. Stinnett, the victim's primary caretaker was the petitioner, who was Ms. Stinnett's boyfriend. *Id.* at *5. On the afternoon of April 5, 2011, Ms. Stinnett took the victim to Walmart where she noticed the victim had bruises on her face and head. *Id.* After they returned to the apartment, the petitioner put the victim to bed while Ms. Stinnett looked after her other child. *Id.* Later that evening, Ms. Stinnett left again to run errands. *Id.* When she returned, Mr. Stinnett was outside the apartment on the phone saying, "the baby's not breathing." *Id.* Ms. Stinnett entered the apartment and found the petitioner walking out of their bedroom holding the "limp" victim. *Id.* Ms. Stinnett took the victim from the petitioner and went to the apartment complex security guard, who called 9-1-1 and told Ms. Stinnett to go back into her apartment. *Id.* Ms. Stinnett took the victim back inside and lay with her on the couch until the ambulance arrived. *Id.* According to Ms. Stinnett, before she notified the security guard she needed help, the petitioner left the apartment to avoid detection because he was not allowed on the premises. *Id.*

Mr. Stinnett, the petitioner's cousin, testified he lived in the apartment with Ms. Stinnett, the petitioner, the victim, and Ms. Stinnett's other child. *Id.* at *6. Mr. Stinnett stated he was not related to Ms. Stinnett. *Id.* He also stated the petitioner was not the victim's father but was her primary caretaker. *Id.* at *7. According to Mr. Stinnett, the petitioner would "spank" and "whip" the victim in the victim's bedroom, and the victim acted "very quiet" and "scared" around the petitioner. *Id.* On April 4, 2011, when Mr. Stinnett was home alone with the victim, the victim came out of her bedroom with bruises on her face, forehead, and below the eyes. *Id.* at *8. According to Mr. Stinnett, the victim did not have bruises on her face the day before. *Id.* at *9. On April 5, the victim remained in her bedroom the entire day. *Id.* at *8. While Ms. Stinnett was gone from the apartment, the petitioner brought the victim out of her bedroom, claiming she was "acting weird" and he needed help with her. *Id.* The victim "couldn't catch her breath," so Mr. Stinnett decided to call the police. *Id.* According to Mr. Stinnett, the petitioner did not want him to call the police because the petitioner had an outstanding arrest warrant, but Mr. Stinnett called anyway. *Id.* Mr. Stinnett stated the petitioner left the apartment, and Mr. Stinnett did not see the petitioner again. *Id.*

Investigator Krista Sheppard of the Knoxville Police Department arrived at the University of Tennessee Hospital on April 5, 2011, where she saw the victim and observed Ms. Stinnett tell another investigator that Mr. Stinnett was taking care of the victim when "she had fallen out of her crib." *Id.* at *9. However, when Investigator Sheppard spoke with Ms. Stinnett, she learned the petitioner had also been with the victim that day. *Id.* at *10. Investigator Sheppard stated that at some point, the petitioner was arrested pursuant to a warrant, and she interviewed him on April 6, 2011. *Id.* The petitioner told Investigator Sheppard he would take care of the victim while Ms. Stinnett was at work. *Id.* According

to the petitioner, the victim's small bruises were caused by playing and falling down. *Id*. He also noticed "real bad" bruises on the victim's face and legs, carpet burn on her face, and both lips were "busted." *Id*. While he acknowledged it looked like the victim had been beaten, his only explanation was the victim falling out of her crib. *Id*. at 10. The petitioner claimed that on April 5, he went to the victim's bedroom to check on her and noticed she "was curled up in a ball moaning." *Id*. at 11. He thought the victim was having a seizure because Ms. Stinnett had seizures. *Id.* The petitioner denied being abusive toward the victim. *Id.*

Arthur Lee Hubbard testified on behalf of the petitioner. *Id*. at *14. He stated that he had known the petitioner since 2001 and that he had lived with the petitioner and Ms. Stinnett in 2010 or early 2011. *Id*. Mr. Hubbard stated he observed the petitioner taking care of the victim while Ms. Stinnett was at work. *Id*. He testified he had seen both the petitioner and Ms. Stinnett discipline the victim, but he did not see anyone abuse the victim or see anything occur that would make him think the petitioner was not a good caregiver. *Id*. On cross-examination, Mr. Hubbard agreed he was in prison for attempted robbery and assault at the time of trial. *Id*. He admitted he was in and out of the apartment when he stayed there, and he did not pay "a hundred percent" attention to the victim. *Id*.

Based on the evidence produced at trial, the jury found the petitioner guilty of felony murder committed during the perpetration of aggravated child abuse and aggravated child abuse. *Id.*

### B. Post-Conviction

The petitioner subsequently filed a pro se petition for post-conviction relief, which was amended after the appointment of counsel. In the amended petition, the petitioner argued trial counsel was ineffective at trial for failing to object to an improper statement by the prosecutor during rebuttal closing argument. The petitioner also argued trial counsel was ineffective on appeal for failing to challenge a separate improper statement made during the prosecutor's rebuttal closing, to which trial counsel had lodged a contemporaneous objection.

The sole witness at the post-conviction hearing was trial counsel, who testified he represented the petitioner at trial, at the motion for new trial, and on appeal. Trial counsel's defense strategy was to attribute the victim's injuries to accidents resulting from the victim playing in her bedroom, as well as to abuse by Mr. Stinnett, who was living at Ms. Stinnett's apartment when the injuries occurred.

Trial counsel recalled he objected "more than most [attorneys] normally object" during the prosecutor's closing arguments. He specifically recalled that during rebuttal

closing the prosecutor stated trial counsel did not mention the victim's name during his closing argument. Trial counsel objected to the statement because he believed it was improper.

Trial counsel testified that on appeal, he argued sufficiency of the evidence, *Brady*[2] violations, and improper testimony by Mr. Stinnett. He admitted he did not raise the improper closing issues in the motion for new trial or on appeal because he had already raised thirteen issues which he believed were more important. He agreed that failure to raise the issues in the motion for new trial resulted in waiver of the issues on appeal.

On cross-examination, trial counsel was asked to read the prosecutor's rebuttal closing from the trial transcript. The transcript revealed that the prosecutor stated during rebuttal closing, "I just heard the entire closing and I'm not sure [trial counsel] mentioned [the victim] once." When trial counsel objected, the trial court responded, "It's closing argument." At that point, the prosecutor clarified, "[trial counsel] didn't mention [the victim] much." Trial counsel stated he did not renew his objection because "the [trial court] was not going to grant me relief at that point, so raising [the issue] twice means I lose in front of the jury twice."

Trial counsel was also asked about the prosecutor's statement in rebuttal closing that "[e]verybody failed [the victim]. Don't fail [the victim]." While trial counsel initially thought he objected to the statement, he acknowledged after reading the transcript that he did not. He agreed the statement was improper and stated "If I had been on my toes at that moment, there certainly would have been an objection." He also stated, "I don't know why I missed that objection," but explained that "[i]t's hard not to miss an objection or two here and there."

After reviewing the evidence presented, the post-conviction court denied relief, and this timely appeal followed.

### *Analysis*

On appeal, the petitioner argues trial counsel was ineffective at trial for failing to object to an improper statement by the prosecutor during rebuttal closing argument and on appeal for failing to raise the issue of a separate improper statement by the prosecutor during rebuttal closing argument. The State contends trial counsel's failure to object at trial was not deficient and did not cause prejudice to the petitioner. The State further contends trial counsel's decision not to pursue these claims on appeal was a tactical

---

[2] *See Brady v. Maryland*, 373 U.S. 83 (1963).

decision, and therefore, was not deficient. Following our review of the record and submissions of the parties, we affirm the judgment of the post-conviction court.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. *Dellinger v. State*, 279 S.W.3d 282, 293 (Tenn. 2009) (citing U.S. Const. amend. VI; *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 688-89. Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). The *Strickland* standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. *State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

When reviewing trial counsel's performance, this Court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689). The fact that a trial strategy or tactic failed or was detrimental to the defense does not, alone, support a claim for ineffective assistance of counsel. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is given to sound tactical decisions made after adequate preparation for the case. *Id*.

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); *see Dellinger*, 279 S.W.3d at 293-94. On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of the witnesses, the weight and value

to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. *Id*. Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. *Id*. at 457.

## A. Failure to Object to Improper Closing

The petitioner argues trial counsel was ineffective for failing to object to the prosecutor's statement during rebuttal closing argument that "[e]verybody failed [the victim]. Don't fail [the victim]." The petitioner argues the statement was "a blatant manipulation of the emotions of this case to make the jury feel as if they must find some way to find the [petitioner] guilty, or else they, the jurors, had also 'failed' this child victim." The State argues failing to object did not constitute deficient performance because the statement "was akin to a simple request that the jury return a guilty verdict." The State further contends that even if the statement constituted improper argument, the petitioner has failed to demonstrate that he was prejudiced.

"Closing arguments serve to sharpen and to clarify the issues that must be resolved in a criminal case" and enable "the opposing lawyers to present their theory of the case and to point out the strengths and weaknesses in the evidence to the jury." *State v. Hawkins*, 519 S.W.3d 1, 47 (Tenn. 2017) (citations and quotations omitted). Because counsel in criminal cases are "'expected to be zealous advocates,'" they are afforded "'great latitude in both the style and the substance of their arguments.'" *Id.* (quoting *State v. Banks*, 271 S.W.3d 90, 130-31 (Tenn. 2008)). Prosecutors, however, "must not lose sight of their duty to seek justice impartially and their obligation 'to see to it that the defendant receives a fair trial.'" *Id.* at 47-48 (quoting *Banks*, 271 S.W.3d at 131). Accordingly, a "prosecutor's closing argument must be temperate, must be based on the evidence introduced at trial, and must be pertinent to the issues in the case." *Banks*, 271 S.W.3d at 131 (citations omitted). "[P]rosecutors, no less than defense counsel, may use colorful and forceful language in their closing arguments, as long as they do not stray from the evidence and the reasonable inferences to be drawn from the evidence, or make derogatory remarks or appeal to the jurors' prejudices." *Id.* (citations omitted).

There are five generally recognized areas of prosecutorial misconduct that can occur during closing arguments: (1) "[i]t is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw"; (2) "[i]t is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant"; (3) "[t]he prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury"; (4) "[t]he prosecutor should refrain from argument which would

divert the jury from its duty to decide the case on evidence, by injecting issues broader than guilt or innocence of the accused under the controlling law"; and (5) "[i]t is unprofessional conduct for a prosecutor to intentionally refer to or argue facts outside the record unless the facts are matters of common public knowledge." *State v. Goltz*, 111 S.W.3d 1, 6 (Tenn. Crim. App. 2003) (internal citations omitted).

During cross-examination at the post-conviction hearing, trial counsel agreed the statement, "[d]on't fail the victim," was improper. Trial counsel claimed he would have objected if he had "been on [his] toes at that moment," but he "missed that objection." Although in hindsight trial counsel conceded he made a mistake, we must evaluate his conduct through his perspective at the time of trial. *See Howell*, 185 S.W.3d at 326. Our review of the record demonstrates trial counsel had already lodged six objections during the prosecutor's closing arguments before the prosecutor made the statement at issue. Though the statement was certainly forceful, it was not, as the petitioner suggests, so inflammatory as to "manipulate" the jury. Because trial counsel made several prudent attempts to defend the petitioner during the prosecutor's closing, we conclude trial counsel was not deficient for failing to object to one questionable statement.

The petitioner has also failed to demonstrate he was prejudiced by trial counsel's failure to object. At trial, the State produced compelling evidence against the petitioner. Several medical experts testified the cause of death was child abuse. The victim's mother testified the petitioner was the victim's primary caregiver, and the petitioner was caring for the victim at the time of her injuries. Mr. Stinnett, who also lived in the apartment, testified the victim acted "very quiet" and "scared" around the petitioner. Mr. Stinnett stated that on April 5, 2011, he observed the petitioner walk out of the victim's bedroom holding the victim, who "couldn't catch her breath" and had several injuries that were not present the day before. Additionally, to the extent the prosecutor's statement may have provoked prejudice or sympathy, the trial court instructed the jury to have "no prejudice, or sympathy, or allow anything but the law and the evidence to have any influence upon your verdict." The trial court also instructed the jury that "[s]tatements, arguments, and remarks of counsel are intended to help you in understanding the evidence and applying the law but they are not evidence." This Court presumes the jury followed the trial court's instructions. *State v. Joshua R. Starner*, No. M2014-01690-CCA-R3-CD, 2016 WL 1620778, at *21 (Tenn. Crim. App. Apr. 20, 2016) (citing *State v. Young*, 196 S.W.3d 85, 111 (Tenn. 2006); *State v. Shaw*, 37 S.W.3d 900, 904 (Tenn. 2001)). The petitioner has failed to demonstrate that but for trial counsel's failure to object, the outcome of his trial would have been different. Therefore, the petitioner is not entitled to relief on this issue.

B.  *Failure to Raise Improper Closing Issue on Appeal*

The petitioner also argues trial counsel was ineffective on appeal for not raising a separate claim of improper argument at the motion for new trial or on appeal. Specifically, he contends the prosecutor's statement that trial counsel did not mention the victim's name during closing argument should have been raised as a basis for a new trial. The petitioner alleges the issue should have been challenged on appeal "as a basis to reinforce the argument that the cumulative effect of error" undermined the petitioner's right to a fair trial. The State contends the issue of improper closing would not have been successful on appeal, and trial counsel made a strategic decision to not raise the issue.

The test used to determine whether appellate counsel was constitutionally effective is the same test applied to claims of ineffective assistance of counsel at the trial level. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004). To establish a claim of ineffective assistance of counsel, the petitioner must show that: 1) counsel's performance was deficient; and 2) counsel's deficient performance prejudiced the outcome of the proceedings. *Strickland*, 466 U.S. at 687; *see Carpenter*, 126 S.W.3d at 886.

When a petitioner bases his claim of ineffective assistance of counsel on counsel's failure to raise an issue on appeal, the petitioner proves deficient performance by showing that "this omission was so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Carpenter*, 126 S.W.3d at 887. The petitioner satisfies the prejudice prong of the *Strickland* test by showing there is a reasonable probability, or "a probability sufficient to undermine the confidence in the outcome," that but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

"Appellate counsel is not constitutionally required to raise every conceivable issue on appeal." *Carpenter*, 126 S.W.3d at 887 (citing *King v. State*, 989 S.W.2d 319, 334 (Tenn. 1999)). Generally, appellate counsel has the discretion to determine which issues to raise on appeal and which issues to leave out. *Id.* Thus, courts should give considerable deference to appellate counsel's professional judgment with regard to which issues will best serve the petitioner on appeal. *Id.* Appellate counsel is only afforded this deference, however, "if such choices are within the range of competence required of attorneys in criminal cases." *Id.*

When a claim of ineffective assistance of counsel is based on the failure of appellate counsel to raise a specific issue on appeal, the reviewing court must determine the merits of the issue. *Id.* "If an issue has no merit or is weak, then appellate counsel's performance will not be deficient if counsel fails to raise it." *Id.* Similarly, if the omitted issue has no merit then the petitioner suffers no prejudice from counsel's decision not to raise it. *Id.* If the issue omitted is without merit, the petitioner cannot succeed in his ineffective assistance claim. *Id.*

On direct appeal, this Court will invalidate a defendant's conviction based on a prosecutor's improper argument only when "the argument [was] so inflammatory that it affected the verdict to the Appellant's detriment." *Goltz*, 111 S.W.3d at 5 (quoting *Harrington v. State*, 385 S.W.2d 758, 759 (Tenn. 1965)). There are five factors to consider to determine whether there was prosecutorial misconduct in closing arguments: (1) the facts and circumstances of the case; (2) any curative measures undertaken by the court and the prosecutor; (3) the intent of the prosecution; (4) the cumulative effect of the improper conduct and any other errors in the record; and (5) the relative strength or weakness of the case. *Judge v. State*, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976).

The petitioner argues the prosecutor's statement that trial counsel failed to mention the victim's name during closing argument was "calculated to insult the integrity, decency, or empathy of [trial] counsel, and thereby discredit [trial] counsel personally and undermine his ability to represent his client professionally in front of the jury." In denying relief on this issue, the post-conviction court found that the State produced a strong case against the petitioner at trial and that the prosecutor's statement was not made with a malicious or improper motive. After reviewing the petitioner's claim, we agree with the post-conviction court's conclusion.

At the post-conviction hearing, trial counsel testified that after the trial court overruled his objection to the statement and the prosecutor clarified his statement, trial counsel did not renew his objection because he did not want to call more attention to the issue in front of the jury. He also explained he did not raise the issue in the motion for new trial or on appeal because he had already raised thirteen issues at the motion for new trial which he believed yielded stronger arguments. Although the prosecutor's statement was inappropriately aimed at trial counsel's closing argument strategy, the petitioner has failed to demonstrate that it would have warranted reversal on appeal. Accordingly, the petitioner's claim is without merit. Due to the considerable deference owed to the professional judgment and tactical decisions of counsel, we conclude trial counsel was not deficient for making a strategic decision to only raise the issues he reasonably believed might have succeeded on appeal. *See Carpenter,* 126 S.W.3d at 887; *King*, 989 S.W.2d at 334 ("Counsel is given considerable leeway to decide which issues will serve the appellant best on appeal, and we should not second guess those decisions here."). Therefore, the petitioner is not entitled to relief.

### *Conclusion*

Based upon the foregoing authorities and reasoning, we affirm the post-conviction court's judgment denying the petitioner post-conviction relief.

_____
J. ROSS DYER, JUDGE